**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF FLORIDA**
JACKSONVILLE DIVISION

| | |
|---|---|
| In re: | Case No. 3:12-BK-4524-JAF |
| | Chapter 11 |
| OCALA FUNDING, LLC., | |
|     Debtor. | |
| _____/ | |
| | |
| OCALA FUNDING, LLC, | Adv. No. 3:12-ap-650-JAF |
|     Plaintiff, | |
| vs. | |
| SOVEREIGN BANK, | |
|     Defendant. | |
| _____/ | |

**SOVEREIGN BANK'S MOTION FOR IMMEDIATE WITHDRAWAL**
**OF REFERENCE OF ENTIRE ADVERSARY PROCEEDING**

Defendant, Sovereign Bank, N.A. ("**Sovereign**"), by and through its undersigned counsel and pursuant to 28 U.S.C. § 157(d), Federal Rule of Bankruptcy Procedure 5011(a), Local Bankruptcy Rule 5011-1, the Standing Order of Reference dated February 22, 2012, and the United States Supreme Court's June 23, 2011 decision in *Stern v. Marshall*, 131 S. Ct. 2594 (2011), moves for immediate withdrawal of the reference of the entirety of this Adversary Proceeding (the "**Adversary Proceeding**"). In support of the requested relief, Sovereign relies upon the record entries designated on the attached **Exhibit A**.

**Preliminary Statement**

1. This Adversary Proceeding seeks avoidance and recovery of a single payment allegedly made to Sovereign. The sole theory espoused for recovery is that the payment is avoidable as a state law fraudulent transfer pursuant to Florida's Uniform Fraudulent Transfer Act (as permitted by Section 544(b) of the Bankruptcy Code). Sovereign – the only defendant in this Adversary Proceeding – is not listed as a creditor of the Debtor, has not filed a proof of claim in this bankruptcy case and has not even appeared in this bankruptcy case. Accordingly, this is exactly the type of claim that the Supreme Court has stated is subject to adjudication only by an Article III court:

> Even if one accepts this thesis [that restructuring of the debtor-creditor relationship is in fact a public right], Congress could not constitutionally assign resolution of the fraudulent conveyance action to a non-Article III court.

*Stern*, 131 S.Ct. at 2641, n. 7. Because the Supreme Court has squarely stated there is a constitutional right to an Article III judge in connection with adjudication of a fraudulent transfer claim, cause exists to withdraw the reference of this Adversary Proceeding in full.

2. Furthermore, the Plaintiff concedes in the Complaint that each of its claims is a "core proceeding." There is no *statutory* authorization that could be construed as permitting a bankruptcy court to render findings of fact and conclusions of law for core proceedings that it may not constitutionally hear. *See* 28 U.S.C. § 157(c)(1) (expressly authorizing a bankruptcy judge to "hear a proceeding that is not a core proceeding" and to submit proposed findings of fact and conclusions of law to the district court, but containing no such authorization with respect to core proceedings); *see also*

*Ortiz v. Aurora Health Care, Inc.*, 665 F.3d 906 (7th Cir. 2011) (holding that bankruptcy courts do not have authorization to issue proposed findings of fact or conclusions of law under 28 U.S.C. § 157(c)(1) with respect to core proceedings).

3. Additionally, Sovereign has a constitutional right to a jury trial by an Article III court. *See Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33 (1989) (holding that a fraudulent transfer defendant that has not filed a proof of claim has a Seventh Amendment right to a jury trial by an Article III court). This also constitutes cause to withdraw the reference.

4. The Court should withdraw the reference with respect to the Adversary Proceeding in full – effective immediately – rather than for trial purpose only. Failure to do so would result in a fundamental denial of Sovereign's due process rights by denying Sovereign the right to an Article III judge through all pretrial litigation, potentially resulting in a "redo" of all such pretrial litigation if the Eleventh Circuit or Supreme Court subsequently rules that a bankruptcy court does not have either constitutional or statutory authority to resolve certain disputes incidental to a fraudulent transfer claim in which the defendant has not filed a proof of claim. Examples of disputes incident to the fraudulent transfer claim include motions to dismiss, motions for summary judgment, discovery disputes and motions in limine. This is a very real risk in light of the fact that the only two Circuit Courts of Appeal to squarely address *Stern* have both (a) held that a bankruptcy court may not Constitutionally adjudicate a claim intended to "augment the estate" such as the fraudulent transfer claims that are the subject of this Adversary Proceeding, and (b) raised issues as to whether a bankruptcy court has *statutory* authority

to issue proposed findings of fact and conclusions of law in connection with a core proceeding.

## Background

5.     The Plaintiff, Ocala Funding, LLC ("Plaintiff"), commenced this Adversary Proceeding against Sovereign by filing a Complaint in the bankruptcy court seeking to avoid as a state-law fraudulent transfer a single transfer of $22,461,004.55 allegedly made by the Plaintiff to Sovereign in May 2009 – more than three years before the filing of the Plaintiff's bankruptcy case.  The Complaint contains three Counts, each of which seeks avoidance of the single transfer pursuant to Chapter 726 of the Florida Statutes – Florida's version of the Uniform Fraudulent Transfer Act (pursuant to the authorization contained in Section 544(b) of the Bankruptcy Code) – and one Count seeking to recover the avoided transfer pursuant to 11 U.S.C. §§ 550 and 551.

6.     Sovereign is not a creditor of Plaintiff, has not been listed by Plaintiff as a creditor and has not filed a claim in Plaintiff's bankruptcy case.  *See* Bankruptcy Schedules [Case No. 3:12-BK-4524-JAF, ECF No. 76] and Claims Register.

7.     Additionally, Sovereign is entitled to a trial by jury on Plaintiff's fraudulent transfer claims and does not consent to a non-Article III court hearing any portion of this matter, let alone conducting a jury trial or entering a final order or judgment on the fraudulent transfer claims.[1]

---

[1]     Sovereign hereby demands a jury trial pursuant to Federal Rule of Bankruptcy Procedure 9015.

4

**Argument**

I. **Withdrawal of the Reference is Appropriate Because the Bankruptcy Court Does Not have Constitutional Authority to Adjudicate the Fraudulent Transfer Claims, the Bankruptcy Court Does Not Have Statutory Authority to Make Proposed Findings and Conclusions, and Sovereign is Entitled to a Jury Trial.**

Sovereign respectfully submits that the District Court is the appropriate forum for litigating the issues and claims presented in the Adversary Proceeding and therefore the reference to the bankruptcy court should be withdrawn in full immediately. A district court may withdraw the reference to the bankruptcy court to hear an adversary proceeding "for cause shown." 28 U.S.C. § 157(d). Section 157(d) does not define the term "cause," but courts in the Eleventh Circuit have examined a number of factors to determine whether withdrawal is appropriate. Here, the reference should be withdrawn because the Bankruptcy Court does not have constitutional authority to adjudicate the claims that are the subject of this Adversary Proceeding, the Bankruptcy Court does not have statutory authority to render findings of fact and conclusions of law for core proceedings such as those that are the subject of this Adversary Proceeding and because Sovereign has demanded and is constitutionally entitled to a jury trial by an Article III court.

    A. **The Bankruptcy Court Lacks Constitutional Authority to Adjudicate the Fraudulent Transfer Claims.**

8.     28 U.S.C. § 157(b)(1) purports to grant to a bankruptcy court authorization to "hear and determine" core proceedings, including fraudulent transfer actions. 28 U.S.C. § 157(b)(1) and (b)(2)(H). The Supreme Court in *Stern*, however, reviewed the propriety of § 157(b)(2) and, properly applied here, makes clear that although the

Case 5:12-cv-00646-ACC   Document 1-1   Filed 11/21/12   Page 6 of 20 PageID 7

bankruptcy court has *statutory* authority to determine the fraudulent transfer claims in this Adversary Proceeding, it lacks *constitutional* authority to do so.

9. The United States Court of Appeals for the Sixth Circuit (one of only two circuit courts to address the substantive issues raised by *Stern*) properly summarized *Stern*'s holding as follows:

> *Stern* thus provides a summary of the law in this area: When a debtor pleads an action under federal bankruptcy law and seeks disallowance of a creditor's proof of claim against the estate—as in *Katchen*—the bankruptcy court's authority is at its constitutional maximum. 131 S.Ct. at 2617-18. But when a debtor pleads an action arising only under state-law, as in *Northern Pipeline*; or when the debtor pleads an action that would augment the bankrupt estate, but not "necessarily be resolved in the claims allowance process[,]" 131 S.Ct. at 2618; then the bankruptcy court is constitutionally prohibited from entering final judgment. *Id.* at 2614.

*Waldman v. Stone*, 2012 WL 5275241, *7 (6th Cir. Oct. 26, 2012).

10. In *Stern*, the Supreme Court recognized that Section 157(b)(2) provides express statutory authority for the bankruptcy court to enter a final judgment on a state law counterclaim, but held that Article III of the Constitution did not so allow. *Stern*, 131 S. Ct. at 2608. In so holding, the Court reasoned that:

> when a suit is made of 'the stuff of the traditional actions at common law tried by the courts at Westminster in 1789,' and is brought within the bounds of federal jurisdiction, the responsibility for deciding that suit rests with Article III judges in Article III courts.

*Id.* at 2609 (quoting *Northern Pipeline Constr. Co. v. Marathon Pipe Line Co.*, 458 U.S. 50, 90 (1982)). The Supreme Court specifically discussed the impact of its ruling on fraudulent transfer claims such as those brought by the Plaintiff, holding that:

6

> fraudulent conveyance suits were 'quintessentially suits at common law that more nearly resemble state law contract claims brought by a bankrupt corporation to augment the bankruptcy estate than they do creditors' hierarchically ordered claims to a pro rata share of the bankruptcy res.'

*Id.* (quoting *Granfinanciera*, 492 U.S. at 56).[2] As a result,

> Congress could not constitutionally assign resolution of the fraudulent conveyance action to a non-Article III court.

*Id.* at 2614, n.7 (citing *Granfinanciera*, 492 U.S. at 56, n.11).

11. The Supreme Court found that an exception lies for cases involving "public rights," *id.* at 2610, noting that claims resolved through the "claims allowance or disallowance process" or those "integral to the restructuring of the debtor-creditor relationship" may qualify for this exception. *Id.* at 2611. But the Court specifically held that fraudulent transfer actions do *not* qualify for this exception because those claims merely augment the bankruptcy estate. *Id.* at 2614; *see also Granfinanciera*, 492 U.S. at 56-61 (fraudulent transfer actions do not qualify as "public rights" cases and Congress' inclusion of fraudulent transfer actions as "core" could not divest a party's Seventh Amendment rights by placing exclusive jurisdiction in an administrative court or a court of equity, such as the bankruptcy court).

12. Indeed, the Court clearly reiterated in *Stern* that a fraudulent transfer action by a bankruptcy trustee or debtor against a defendant who has not filed a proof of claim in the bankruptcy case – like the defendant in *Granfinanciera* (or Sovereign) – is akin to a common law contract action that involves a "private right" requiring

---

[2] It is also clear that fraudulent transfer actions were "often brought *at law* in late 18th century England" and that "a court of equity would *not* have adjudicated it." *See Granfinanciera*, 492 U.S. at 43 and 47 (emphasis added).

adjudication by an Article III court. In the absence of any such proof of claim, there is simply no way to characterize adjudication of the core fraudulent transfer claims raised here as integral to the restructuring of the debtor-creditor relationship or as resolved through the claims allowance process, which may be determined by an Article I court as involving "public rights." *Stern*, at 2611.[3]

13. Only two Circuit Courts of Appeal have squarely addressed a bankruptcy court's constitutional authorization to adjudicate claims in light of *Stern*. Both of these cases have held that a bankruptcy court does not have constitutional authorization to adjudicate "private rights" absent consent of the parties. *See generally Waldman*, 2012 WL 5275241, and *Ortiz*, 665 F.3d 906.

14. In *Waldman*, the bankruptcy court determined that an individual debtor's primary secured lender had obtained nearly all of the debtor's business assets by fraud. Based on this finding, the bankruptcy court disallowed the secured creditor's claim in its entirety and awarded the debtor a $3,000,000 judgment for damages against the secured creditor. The district court affirmed the bankruptcy court's judgment in all respects.

15. On appeal, the Sixth Circuit affirmed the disallowance of the secured creditor's claim but held that the bankruptcy court lacked constitutional authority to award damages against the secured creditor. In so holding, the Sixth Circuit relied on the Court's reasoning in *Stern*, including the dichotomy between "private rights" and "public rights:"

---

[3] The absence of any proof of claim is a key distinguishing factor from the situations in *Katchen v. Landy*, 382 U.S. 323 (1966) and *Langenkamp v. Culp*, 498 U.S. 42 (1990). In those cases the creditor had filed a proof of claim, on which it was impossible for the bankruptcy court to rule without also resolving the preference claim brought by the estate. *Stern*, 131 S. Ct. at 2616-17.

8

> The adjudication of so-called private rights—historically described as "the liability of one individual to another under the law as defined"—is part of the judicial Power reserved to Article III courts under the Constitution. *Stern*, 131 S.Ct. at 2612. Bankruptcy courts therefore cannot enter final judgments as to claims involving liability between individuals, unless the claim falls within the so-called "public rights" exception to Article III. *Id.* at 2610. A public-rights claim is one that "derives from a federal regulatory scheme, or in which resolution of the claim by an expert governmental agency is essential to a limited regulatory objective within the agency's authority." *Id.* at 2613. Whether Stone's claims involve "public rights" is the issue here.

2012 WL 5275241, at *5. As the Supreme Court has made clear, a fraudulent transfer action is a private rather than a public right. *Stern*, 131 S.Ct. at 2614; *Granfinanciera*, 492 U.S. at 56 (holding that fraudulent transfer claims "constitute no part of the proceedings in bankruptcy."). The bankruptcy court does not, therefore, have constitutional authority to adjudicate a fraudulent transfer claim. *See Waldman*, 2012 WL 5275241, at *6 (based on Supreme Court precedent "only an Article III court can enter final judgment on [a fraudulent transfer claim]"); *see also Development Specialists, Inc. v. Akin Gump Strauss Hauer & Feld LLP*, 2011 WL 5244463 (S.D.N.Y. Nov. 2, 2011) (concluding that fraudulent transfer claims involve only private rights and are not claims over which bankruptcy courts can constitutionally exercise final adjudicative authority); *In re Canopy Financial, Inc.*, 2011 WL 3911082, at *3 (N.D. Ill. Sep. 1, 2011) (holding that bankruptcy courts lack constitutional authority to enter final judgment on fraudulent transfer claims); *In re Blixseth*, 2011 WL 3274042, at *12 (Bankr. D. Mont. Aug. 1, 2011) (holding that bankruptcy courts lack constitutional authority to enter final judgment on fraudulent transfer claims and that no statutory mechanism exists for a

bankruptcy court to issue proposed findings of fact or conclusions of law on matters that are statutorily core), amended by *In re Blixseth*, 2012 WL 10193 (Bankr. D. Mont. Jan. 3, 2012).[4]

16. Similarly, *Ortiz* involved a class action brought on behalf of multiple individual debtors against Aurora Health Care. The complaint alleged that Aurora, a medical provider, had filed proofs of claim in approximately 3,200 bankruptcy cases in Wisconsin in which it had disclosed confidential medical information in violation of a Wisconsin statute. 665 F.3d at 908. The bankruptcy court dismissed the complaint on Aurora's motion for summary judgment because it found that the Wisconsin statute required proof of actual damages and that the plaintiffs had failed to provide such proof. *Id*. The parties then took a direct appeal to the Seventh Circuit. *Id*.

17. Relying on *Stern*, the Seventh Circuit determined that the bankruptcy court did not have constitutional authorization to adjudicate the debtors' claims as the debtors merely sought "to augment the bankruptcy estate - the very type of claim that… must be decided by an Article III court:"

> Just as Pierce's filing of a proof of claim in Vickie's bankruptcy did not give the bankruptcy judge authority to adjudicate her counterclaim, Aurora's act of filing proofs of claim in the debtors' bankruptcies did not give the bankruptcy judge authority to adjudicate the debtors' state-

---

[4] Notwithstanding this clarity, some lower courts have misconstrued the Supreme Court's statements that fraudulent transfer claims are private rights, which must be heard and determined by Article III courts. For example, in *In re Safety Harbor Resort and Spa*, 456 B.R. 703, 718 (Bankr. M.D. Fla. 2011), the bankruptcy court described the Supreme Court's clear statements in *Stern* that fraudulent transfer claims are private rights as "cursory dicta." This description is incorrect. *Stern* relies directly upon the proposition expressed in *Granfinanciera* that "fraudulent conveyance suits [are] 'quintessentially suits at common law'" that do not fall "within the 'public rights' exception" to conclude that the "counterclaim [at issue in *Stern*]—like the fraudulent conveyance claim at issue in *Granfinanciera*—does not fall within any of the varied formulations of the public rights exception in this Court's cases." *Stern*, 131 S.Ct. at 2614 (emphasis added).

> law claims. The debtors' claims seek "to augment the bankruptcy estate—the very type of claim that ... must be decided by an Article III court."

665 F.3d at 914 (quoting *Stern*, 131 S.Ct. at 2616). The Seventh Circuit then concluded that because the bankruptcy court lacked adjudicatory authority, the Seventh Circuit had no appellate jurisdiction. *Id*. at 915.

### B. The Bankruptcy Court May Not Render Proposed Findings of Fact and Conclusions of Law on Matters that are Statutorily Core.

18. Not only are bankruptcy courts *constitutionally* prohibited from entering a final, binding judgment on an action to avoid a fraudulent conveyance, they lack the *statutory* authority to hear the proceeding and submit findings of fact and conclusions of law to a federal district court judge in lieu of entering a final judgment. *See Ortiz*, 665 F.3d at 915 (noting that bankruptcy courts do not have authority to issue proposed findings of fact or conclusions of law under 28 U.S.C. § 157(c)(1) with respect to core proceedings).

19. Bankruptcy courts are creations of statute, and are not contemplated by the United States Constitution. As a result, their power to act is limited by what Congress has authorized. *In re Grabill Corp.*, 967 F.2d 1152, 1156 (7th Cir. 1992) ("bankruptcy courts and other Article I tribunals are ordinary creatures of statute, and derive their authority solely from Congress"). Section 157(c)(1) of the Judicial Code provides that "[a] bankruptcy judge may hear a proceeding that is not a core proceeding but that is otherwise related to a case under title 11," and that "[i]n such proceeding, the bankruptcy judge shall submit proposed findings of fact and conclusions of law to the district court," to be reviewed *de novo*. Congress provided no similar authority to bankruptcy courts in

11

"core" proceedings that, under *Stern*, may not be determined by a bankruptcy court as a constitutional matter.

20. Fraudulent conveyance actions fall within the Judicial Code's definition of "core" proceedings. 28 U.S.C. § 157(b)(2)(H); *see also* Complaint at ¶3 ("[t]his adversary proceeding constitutes a core proceeding as defined in 28 U.S.C. §157(b)(2)(H)."). As a result, these claims are statutorily ineligible for the report-and-recommendation procedure of Section 157(c)(1). *See Ortiz*, 665 F.3d at 915 ("For the bankruptcy judge's orders to function as proposed findings of fact or conclusions of law under 28 U.S.C. § 157(c)(1), we would have to hold that the debtors' complaints were 'not a core proceeding' but are 'otherwise related to a case under title 11.'"); *see also Blixseth*, 2011 WL 3274042, at *12 ("Since this Court may not constitutionally hear the fraudulent conveyance claim as a core proceeding, and this Court does not have statutory authority to hear it as a non-core proceeding, it may in no case hear the claim."). Accordingly, withdrawal of the reference here is mandatory as only an Article III tribunal can hear and determine Plaintiff's fraudulent transfer claims.

21. Some courts purport to have solved this statutory quandary by treating fraudulent conveyance claims as "non-core" claims, and thus subject to the report and recommendation procedure. *See, e.g.*, *In re Emerald Casino, Inc.*, 2011 WL 3799643, at *1 n.1 (Bankr. N.D. Ill. Aug. 26, 2011). Yet federal law does not permit such a court-created *ad hoc* process that lacks any foundation in the Judicial Code. *See Willy v. Coastal Corp.*, 503 U.S. 131, 135 (1992) ("[F]ederal courts, in adopting rules, [are] not free to extend or restrict the jurisdiction conferred by a statute. Such a caveat applies a

fortiori to any effort to extend by rule the judicial power of the United States described in Article III of the Constitution." (citation omitted)).  However expedient it may seem to refer a "core" proceeding to a bankruptcy judge and then to treat the bankruptcy judge's determination as "proposed findings and conclusions," that procedure simply is not contemplated by the scheme Congress established.  An act of Congress is required to grant bankruptcy courts the authority to issue reports and recommendations on fraudulent transfer claims like those at issue here.  *Id.*; *Pressroom Unions-Printers League Income Sec. Fund v. Cont'l Assurance Co.*, 700 F.2d 889, 892 (2d Cir. 1983) ("It is beyond dispute that only Congress is empowered to grant and extend the subject matter jurisdiction of the federal judiciary, and that courts are not to infer a grant of jurisdiction absent a clear legislative mandate.").

22.     In light of *Stern*, it is up to Congress to determine whether claims such as those filed by the Plaintiff here should be heard by the bankruptcy court pursuant to the report and recommendation process or adjudicated outright by the District Court.  Unless and until Congress enacts a legislative fix, fraudulent transfer claims like those asserted here must be heard *in their entirety* by an Article III court.

C.      **Sovereign is Entitled to a Jury Trial**

23.     Sovereign has a Constitutional right under the Seventh Amendment to a trial by jury in the Adversary Proceeding.  *Granfinanciera*, 492 U.S. at 42 (holding that a non-debtor defending a fraudulent transfer adversary proceeding and who had not filed a proof of claim possessed a right to a jury trial).

24. Courts have held that the bankruptcy courts may not conduct jury trials in non-core matters because Section 157(c)(1) of the Bankruptcy Code subjects the jury's verdict to *de novo* review by the district court. *In re Wallace*, 311 B.R. 601, 607 (Bankr. N.D. Okla. 2004); *In re Valley Media, Inc.*, 289 B.R. 27, 32 (Bankr. D. Del. 2003); *In re Bennett Funding Group, Inc.*, 258 B.R. 67 (Bankr. N.D.N.Y. 2000). Moreover, under the plain language of the Bankruptcy Code, the bankruptcy court cannot conduct a jury trial without Sovereign's consent, and Sovereign does not consent to the bankruptcy court conducting a jury trial in this Adversary Proceeding. *See* 11 U.S.C. § 157(e) ("If the right to a jury trial applies in a proceeding that may be heard under this section by a bankruptcy judge, the bankruptcy judge may conduct the jury trial if specially designated to exercise such jurisdiction by the district court and *with the express consent of all the parties.*") (emphasis supplied). Thus, the right to a jury trial is itself sufficient cause to withdraw the reference.

      **D.**    **Additional Cause Exists to Immediately Withdraw the Reference in Full.**

25. Finally, "cause" exists within the meaning of 28 U.S.C. § 157(d) to withdraw the reference of the fraudulent transfer claims in full, for all purposes. In the Eleventh Circuit, factors which courts consider in evaluating whether "cause" has been established include "promoting the economical use of the parties' resources", judicial economy and whether a party is entitled to a jury trial. *Control Center, L.L.C. v. Lauer*, 288 B.R. 269, 273-74 (M.D. Fla. 2002).

26. After *Granfinanciera*'s holding that absent consent of the parties, the bankruptcy court may not conduct a jury trial on a fraudulent transfer claim, district

courts in this district would routinely withdraw the reference of the fraudulent transfer claim, but for trial purposes only. The Supreme Court's ruling in *Stern*, however, mandates departure from the customary post-*Granfinanciera* practice of withdrawing the reference in fraudulent transfer actions (where no proof of claim is filed) only once the case is trial ready.

27. *Stern* and *Granfinanciera* clearly support the conclusion that a non-Article III court does not have Constitutional authority to adjudicate a fraudulent transfer claim in which the defendant has not filed a proof of claim, absent consent of the parties. *Stern*, however, also raises substantial issues as to whether a non-Article III court can adjudicate pre-trial matters involving a claim as to which there a Constitutional entitlement to an Article III court. These include, among other things, motions that are potentially case dispositive such as motions to dismiss and motions for summary judgment; discovery motions and motions in limine. A significant potential for confusion and re-litigation is good cause to withdraw the reference with respect to the entire Adversary Proceeding, effective immediately.

28. Failure to withdraw the reference in full, effective immediately, will result in uncertainty surrounding pretrial practice in connection with the Adversary Proceeding. This is particularly relevant in light of the strong likelihood that the Eleventh Circuit and potentially the Supreme Court will be required to address these or related issues in the near future, potentially causing a "redo" of some or all pre-trial issues.

### F. Conclusion.

29. This Adversary Proceeding presents a compelling case for withdrawal of the reference, immediately and in its entirety. The bankruptcy court is constitutionally prohibited from determining any of these claims and lacks a statutory mechanism to address any of the core claims by way of proposed findings and conclusions. In addition, traditional "cause" exists to withdraw the claims at issue in this case. The District Court, therefore, should withdraw the reference of this Adversary Proceeding in its entirety and without delay.

**WHEREFORE,** Sovereign, respectfully requests that this Court withdraw the reference of this Adversary Proceeding, and grant such other and further relief as the Court may deem just and proper.

Dated: November 5, 2012

Respectfully submitted,

GREENBERG TRAURIG, P.A.
*Attorneys for Sovereign Bank*
625 East Twiggs Street, Suite 100
Tampa, Florida 33602
Telephone:  (813) 318-5700
Facsimile:   (813) 318-5900


By:  /s/ *James P.S. Leshaw*
         James P.S. Leshaw

Robert A. Soriano
Florida Bar No. 445002
*sorianor@gtlaw.com*
Chris Torres
Florida Bar No. 0716731
*torresc@gtlaw.com*
Laureen Galeoto
Florida Bar No. 194107
*galeotol@gtlaw.com*

     -and-

James P.S. Leshaw
Florida Bar No. 917745
*leshawj@gtlaw.com*
Ari Newman
Florida Bar No. 56575
*newmanar@gtlaw.com*
GREENBERG TRAURIG,
333 S.E. 2nd Ave, Suite 4400
Miami, Florida 33131
Telephone:  (305) 579-0500
Facsimile:  (305) 579-0717

## **CERTIFICATE OF SERVICE**

I hereby certify that on November 5, 2012, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record or *pro se* parties identified on the attached Service List, either via transmission of Notices of Electronic Filing generated by CM/ECF or by first class U.S. mail, postage prepaid, for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

/s/ *James P.S. Leshaw*
James P.S. Leshaw

**SERVICE LIST**

**Electronic Mail Notice List**

The following is the list of parties who are currently on the list to receive e-mail notice/service for this case:

**Attorneys for Plaintiff:**

Edward J. Peterson, III
Stichter, Riedel, Blain & Prosser, P.A.
110 East Madison Street, Suite 200
Tampa, FL 33602
epeterson@srbp.com

Jeremy T. Stillings, Esq.
Proskauer Rose LLP
70 West Madison Street, Suite 3800
Chicago, IL 60610
jstillings@proskauer.com

TPA 511,722,853 6

# EXHIBIT A

## DEFENDANT'S DESIGNATION OF RECORD IN CONNECTION WITH MOTION TO WITHDRAW THE REFERENCE

Pursuant to Rule 5011-1(b)(4) of the Local Rules of the United States Bankruptcy Court for the Middle District of Florida, Defendant, Sovereign Bank, hereby submits the following designation of items of the record of adversary proceeding, Adv. No. 3:12-ap-650-JAF, and Case No. 3:12-BK-4524-JAF, in connection with its Motion to Withdraw the Reference:

| Adv. No. 3:12-ap-650-JAF | | |
|---|---|---|
| **Document Number** | **Docket Entry Number** | **Description** |
| 1 | 1 | Adversary Complaint to Avoid Fraudulent Transfers and to Recover Property Transferred Pursuant to 11 U.S.C. § 544 and Sections 726.105(1)(A), 726.105(1)(B) and 726.106(1) of Florida's Uniform Fraudulent Transfer Act (October 5, 2012) |

| Case No. 3:12-BK-4524-JAF | | |
|---|---|---|
| **Document Number** | **Docket Entry Number** | **Description** |
| 2 | 76 | Ocala Funding, LLC: Bankruptcy Schedules |
| 3 | N/A | Ocala Funding, LLC: Claims Register (as of Nov. 5, 2012) |

TPA 511,722,853 6